**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

**KENNY WOODRUFF,**

     **Plaintiff,**

     **v.**

**OHIO DEPARTMENT OF
TRANSPORTATION,**

     **Defendant.**

     **Case No. 1:18-cv-853
JUDGE DOUGLAS R. COLE
Magistrate Judge Litkovitz**

**OPINION AND ORDER**

This cause comes before the Court on Magistrate Judge Litkovitz's April 9, 2021, Report and Recommendation ("R&R") (Doc. 75), which recommends that this Court grant Defendant Ohio Department of Transportation's ("ODOT") Motion for Summary Judgment (Doc. 61) with respect to Plaintiff Kenny Woodruff's Rehabilitation Act discrimination claim, but deny that Motion (Doc. 61) with respect to his failure to accommodate claim. The R&R (Doc. 75) also recommends that this Court deny Woodruff's Motion for Partial Summary Judgment (Doc. 66).

Both parties have objected to the R&R (Docs. 78, 79). For the reasons that follow, the Court **SUSTAINS** ODOT's Objection (Doc. 78) to the Magistrate Judge's R&R (Doc. 75). But the Court **OVERRULES** Woodruff's Objection (Doc. 79) to the R&R (Doc. 75). The Court therefore **ADOPTS IN PART** the Magistrate Judge's R&R (Doc. 75). Specifically, the Court **GRANTS** ODOT's Motion for Summary Judgment (Doc. 61) with respect to all of Woodruff's claims, thereby **DISMISSING** his

Complaint (Doc. 1) **WITH PREJUDICE**. The Court **DENIES** Woodruff's Motion for Partial Summary Judgment (Doc. 66).

## FACTUAL BACKGROUND

This Rehabilitation Act case arises from ODOT's decision to fire Woodruff. Woodruff first began working for ODOT as a highway technician in early 2009. (Woodruff Dep., Doc. 44, #149). The duties of a highway technician include highway maintenance and construction inspection. (Johnson Decl., ODOT Mot. for Summ. J. ("ODOT Mot."), Doc. 61-2, #1553). A highway technician must operate commercial vehicles including heavy machinery. (*Id.*; Highway Technician Classification Specification, Woodruff Dep. Ex. 9, Doc. 44-1, #460).

In August 2014, Woodruff had a motorcycle accident. (Woodruff Dep., Doc. 44, #213). To manage the pain caused by his severe injuries from the accident and subsequent emergency surgery, Woodruff began taking opioids pursuant to a doctor's prescription. (*Id.* at #218). Woodruff continued using opioids pursuant to a prescription, with some interruptions, throughout the remainder of his employment with ODOT. (*Id.* at #220).

After his accident, Woodruff took a medical leave from ODOT. He returned to work on February 1, 2015. (Emp. History Rep., Woodruff Dep. Ex. 5, Doc. 44-1, #446). On September 14, 2017, Woodruff tested positive for cocaine. (9/14/17 Test Result, Woodruff Dep. Ex. 34, Doc. 44-1, #520). Pursuant to the terms of a collective bargaining agreement, Woodruff signed a "Last Chance Agreement" with ODOT that

2

required further drug testing. (Last Chance Agreement, Woodruff Dep. Ex. 15, Doc. 44-1, #477–78).

Effective January 1, 2018, a federal regulation added opioids to the list of substances for which Department of Transportation (DOT) must test. *See* 49 C.F.R. § 40.85. On April 5, 2018 (apparently for the first time), Woodruff's test result showed that he used oxycodone and oxymorphone. (4/5/18 Test Result, Heinen Dep. Ex. 61, Doc. 52-1, #1409). Under the applicable procedures, the medical review officer, Dr. Brian Heinen, issued Woodruff a "negative" test result for illegal drug use because Woodruff provided Heinen with a valid prescription for these substances (and tested negative for all other illegal drugs). (Heinen Dep., Doc. 52, #1376). However, Heinen also noted a "safety concern" because instructions for Woodruff's medication indicated a risk of sedation and cautioned against operating heavy machinery while on the medication. (*Id.*).

ODOT labor relations employee Janet Page became aware of Woodruff's negative-with-safety-risk test result on April 11, 2018. (Page Decl., ODOT Mot., Doc. 61-4, #1562). Page immediately instructed ODOT manager Craig Stout to pick up Woodruff from his worksite and tell Woodruff to perform tasks that were not safety-sensitive while awaiting further instruction at the garage. (*Id.* at #1562–63). Later the same day, Page told Woodruff he needed to provide a physician's statement affirming that he could perform his duties safely before he could return to work. (*Id.* at #1563). Stout also provided Woodruff with a letter to give his physician detailing what the physician would have to confirm, namely the physician's "medical opinion

that Mr. Woodruff would not be a threat to himself or others in the performance of [his] duties or the operation of [specified] equipment as a result of the medication and dosage." (*Id.*; *see also* Stout Decl., ODOT Mot., Doc. 61-3, #1560).

Woodruff's attempt to fulfill this requirement came in the form of a letter from Certified Nurse Practitioner Sarah Brown of Premier Pain Treatment Institute, which prescribed Woodruff's medications. (*See* Brown Letter, ODOT Mot. Ex. 20, Doc. 61-6, #1605). Brown's letter stated, in pertinent part, that Woodruff "denies any impairment in cognition with the medication and he has signed a contract with us agreeing not to drive or operate heavy machinery under the influence of his pain medication." (*Id.*). Brown also stated that Woodruff "is okay to return to work without restrictions as long as he continues to deny any impairment in cognition with his pain medication, and as long as his employer is aware of his current medications and in agreement for patient to continue his current job responsibilities on his current regimen." (*Id.*).

Heinen determined that Brown's letter would not allow Heinen to remove the safety risk notation from Woodruff's drug test result. (Johnson Decl., ODOT Mot., Doc. 61-2, #1555). ODOT also determined that Brown's letter did not satisfy the terms of an applicable federal regulation regarding driver substance use. (*Id.*). (The Court discusses that regulation in more detail below.) Accordingly, Page told Woodruff that Brown's letter would not allow Woodruff to return to work. (Page Decl., ODOT Mot., Doc. 61-4, #1564). In a May 10, 2018, phone call, Page suggested that Woodruff might provide a letter from his physician, rather than from the pain treatment center, and

4

that the letter should conform to ODOT's requirements as explained in the letter that ODOT had given Woodruff. (*Id.* at #1563). Woodruff responded that his physician would not provide the letter because the physician had not prescribed the medication. (*See* 5/10/18 Email, ODOT Mot. Ex. 50, Doc. 61-6, #1627). Woodruff also asked Page whether he could return to work and perform only duties that were not safety-sensitive. (*Id.*). Page told him no given the extent of safety-sensitive duties a highway technician must perform. (*Id.*).

During the next few days, Woodruff had several other conversations with Stout and Page requesting to work in a different position or with different duties than before. (*See* Woodruff Dep., Doc. 44, #272–74). For example, Woodruff asked Page to be allowed to return to work as an "inspector," which Woodruff understood to involve driving a "pick up truck" to oversee construction jobs. (*Id.* at #276). Woodruff also asked Stout to let him work at the garage using "welders and cutting torches" (*id.* at #207) or entering data into the computer (*id.* at #277).

On May 14, 2018, ODOT placed Woodruff on administrative leave. (Page Decl., ODOT Mot., Doc. 61-4, #1564). ODOT also arranged for Woodruff to see Dr. Seth Vogelstein, an independent physician, on July 17, 2018. (Kelly Decl., ODOT Mot., Doc. 61-5, #1566). Vogelstein opined that "there is credible medical evidence to support Mr. Woodruff's inability to safely perform his work duties if he does in fact continue his current pain medication regimen." (Vogelstein Rep., ODOT Mot. Ex. 16, Doc. 61-6, #1603). Vogelstein also wrote that "[w]hile Mr. Woodruff did sign a narcotic contract with his pain physician, there is never a guarantee that he will always take

his medications as prescribed." (*Id.*). Even apart from that, Vogelstein also opined that he could not "specifically state that the Percocet medication Mr. Woodruff is prescribed will not adversely affect his ability to safely operate a commercial motor vehicle." (*Id.*). To the contrary, he concluded that "it is appropriate for there to be safety concerns in this situation, if Mr. Woodruff continues his current pain regimen, including oxycodone/Percocet." (*Id.*).

Given Vogelstein's evaluation, and absent any further medical submissions from Woodruff, ODOT initiated its internal involuntary disability separation process, a step toward terminating Woodruff's employment. On August 13, 2018, ODOT gave Woodruff notice of a pre-separation hearing to be held August 21, 2018. (8/13/18 Hearing Notice, Woodruff Dep. Ex. 24, Doc. 44-1, #492). Woodruff was to be prepared to "provide medical documentation … to indicate [his] ability to return to work and perform the essential functions of [his] position." (*Id.*). At the hearing, Woodruff did not provide any new medical evidence. (Woodruff Dep., Doc. 44, #252–53). ODOT terminated Woodruff effective August 31, 2018. (8/27/18 Letter, Woodruff Dep. Ex. 26, Doc. 44-1, #500).

## PROCEDURAL BACKGROUND

On December 4, 2018, Woodruff initiated this action by filing his Complaint (Doc. 1). Woodruff alleged that ODOT violated the Rehabilitation Act by (1) discriminating against him on the basis of the perceived side effects of his opioid use, and (2) failing to accommodate his opioid use. (*See id.* at #3–4). ODOT answered (Doc. 6) on February 4, 2019.

On October 23, 2020, ODOT moved for summary judgment (Doc. 61), and Woodruff also moved for partial summary judgment (Doc. 66). Among other things, ODOT argued that Woodruff's failure to conform to the requirements of an applicable federal regulation (discussed below) meant Woodruff was not qualified for the position. (ODOT Mot. for Summ. J. ("ODOT Mot."), Doc. 61, #1536). For his part, Woodruff sought summary judgment on his claim for failure to accommodate, on the theory that ODOT should have allowed him to continue in his normal job duties while taking his opioid prescription at night. (Woodruff Mot. for Summ. J. ("Woodruff Mot."), Doc. 66, #2537). Each party responded in opposition (Docs. 69, 71) on November 11, 2020, and replied in support (Docs. 72, 73) on December 11, 2020.

On April 9, 2021, the Magistrate Judge issued her R&R. The Magistrate Judge recommended that the Court deny Woodruff's Motion. (R&R, Doc. 75, #2653). But the Magistrate Judge recommended that the Court grant ODOT's Motion (Doc. 61) in part and deny it in part. (*Id.* at #2653). Specifically, the Magistrate Judge said that (1) ODOT is entitled to summary judgment on Woodruff's disability discrimination claim, because there is no genuine dispute that ODOT had a legitimate, non-pretextual reason for firing Woodruff, but that (2) it is not entitled to summary judgment on its claim for failure to accommodate, as a genuine dispute exists as to ODOT's good-faith participation in the interactive process. (*Id.* at #2644, 2652). Along the way, the Magistrate Judge determined that Woodruff had created a genuine dispute as to whether he was qualified to work as a highway technician. (*Id.* at #2637).

Both parties objected (Docs. 78, 79) on May 7, 2021. ODOT argued primarily that the Magistrate Judge erred in determining that there was a genuine dispute as to whether Woodruff was qualified to do his job with a reasonable accommodation because Woodruff had failed to comply with the applicable federal regulation. (*See generally* ODOT Obj., Doc. 78, #2662–67). Woodruff argued that the Magistrate Judge erred in both recommending dismissal of his discrimination claim and denying him partial summary judgment on his failure to accommodate claim. (Woodruff Obj., Doc. 79, #2674, 2682). ODOT responded in opposition (Doc. 80) to Woodruff's Objection (Doc. 79) on May 21, 2021. After receiving an extension of time (*see* 5/25/2021 Notation Order), Woodruff also responded in opposition (Doc. 82) to ODOT's Objection (Doc. 78) on May 28, 2021. The matter is now fully briefed and before the Court.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 72(b)(3), a district court reviews de novo any aspect of an R&R as to which a party has properly objected. The R&R at issue here addresses a motion for summary judgment. On that front, "[t]he 'party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions' of the record which demonstrate 'the absence of a genuine issue of material fact.'" *See, e.g.*, *Rudolph v. Allstate Ins. Co.*, No. 2:18-cv-1743, 2020 WL 4530600, at *3 (S.D. Ohio Aug. 6, 2020) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). But the non-moving party cannot defeat a motion for summary judgment merely by pointing to any factual dispute. As the Sixth Circuit has explained, "[t]he mere existence of some alleged

8

factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Int'l Outdoor, Inc. v. City of Troy*, 974 F.3d 690, 697 (6th Cir. 2020) (bracket omitted) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)).

## LAW AND ANALYSIS

This case requires the Court to interpret and apply a federal regulation, and then to determine the effect of non-conformity to that regulation with respect to Rehabilitation Act claims for both discrimination and failure to accommodate. As to the former, the regulation at issue, 49 C.F.R. § 382.213(b), states:

> No driver shall report for duty or remain on duty requiring the performance of safety-sensitive functions when the driver uses any non-Schedule I drug or substance that is identified in the other schedules in 21 C.F.R. part 1308 except when the use is pursuant to the instructions of a licensed medical practitioner … who is familiar with the driver's medical history and has advised the driver that the substance will not adversely affect the driver's ability to safely operate a commercial motor vehicle.

With respect to the Rehabilitation Act, as relevant here, courts apply the same standards that apply to claims for disability discrimination and failure to accommodate under the Americans with Disabilities Act. *S.S. v. E. Ky. Univ.*, 532 F.3d 445, 452–53 (6th Cir. 2008). Such claims may be based on either direct evidence or indirect evidence.

To establish a prima facie case of disability discrimination under the direct evidence framework, a plaintiff contesting a termination must show that (1) he is disabled, and (2) he is otherwise qualified for the position, with or without reasonable

9

accommodation. *Fisher v. Nissan N. Am., Inc.*, 951 F.3d 409, 417 (6th Cir. 2020). If the plaintiff makes this initial showing, the employer then has the burden of establishing that a challenged job requirement is essential, or that a proposed accommodation will impose an undue hardship on the employer. *Id.* A reasonable accommodation may not include elimination of an essential job requirement, because that is unreasonable per se. *E.E.O.C. v. Ford Motor Co.*, 782 F.3d 753, 761 (6th Cir. 2015) (citations omitted).

To establish a prima facie case based on indirect evidence, a disability discrimination plaintiff must show all of the following: (1) he is disabled; (2) he is otherwise qualified for the position, with or without reasonable accommodation; (3) he suffered an adverse employment action; (4) his employer knew or had reason to know of his disability; and (5) the position remained open while the employer sought other applicants or he was replaced. *Spence v. Donahoe*, 515 F. App'x 561, 567 (6th Cir. 2013). If the plaintiff can establish this prima facie case, the burden shifts to the defendant to provide a legitimate, non-discriminatory reason for its adverse action against the plaintiff. *Id.* If the defendant meets that burden, the plaintiff can still prevail by showing that the defendant's reason is pretextual. *Id.*

Thus, under either framework, a dispositive issue is whether the plaintiff is otherwise qualified, with or without reasonable accommodation. To determine whether an employee is qualified, an employer must conduct an "individualized inquiry" into the employee's job qualifications. *Holiday v. City of Chattanooga*, 206 F.3d 637, 643 (6th Cir. 2000). Where an employer completed the individualized

inquiry prior to taking the challenged action, the results of that inquiry receive substantial deference. *See Michael v. City of Troy Police Dep't*, 808 F.3d 304, 309 (6th Cir. 2015).

Here, ODOT's primary argument is that Woodruff cannot create a genuine dispute as to the otherwise-qualified element because the undisputed facts show that he could not continue working as a highway technician consistent with the requirements that 49 C.F.R. § 382.213(b) imposes. That argument can be broken into two steps: (1) Woodruff's continued employment would have violated the regulation, and (2) that lack of conformity to the regulation establishes as a matter of law that Woodruff was not qualified to work as a highway technician. ODOT is correct on both counts.

First, ODOT argues that Woodruff could not have continued his work as a highway technician at ODOT consistent with 49 C.F.R. § 382.213(b). (*See* ODOT Obj., Doc. 78, #2662). The Court agrees. There is no dispute that Woodruff's job required the performance of "safety-sensitive functions," which specifically includes "[a]ll time spent at the driving controls of a commercial motor vehicle in operation." *See* 49 C.F.R. § 382.213(b); 49 C.F.R. § 382.107; (*see also* Highway Technician Classification Specification, Woodruff Dep. Ex. 9, Doc. 44-1, #460; Johnson Decl., ODOT Mot., Doc. 61-2, #1553). There is also no dispute that Woodruff's medication is included on the list of substances that trigger the requirements of 49 C.F.R. § 382.213(b). *See* 21 C.F.R. § 1308.12 (listing oxycodone and oxymorphone on Schedule II); (*see also* 4/5/18 Test Result, Heinen Dep. Ex. 61, Doc. 52-1, #1409). Accordingly, to continue

11

performing those safety-sensitive functions, Woodruff needed a "licensed medical practitioner" to have "advised [him] that the substance [he is taking] will not adversely affect [his] ability to safely operate a commercial motor vehicle." 49 C.F.R. § 382.213(b).

The undisputed record evidence shows that Woodruff did not fulfill that requirement. Start with Woodruff's note from Brown. That letter did not contain any affirmative representation about the effect of Woodruff's medication on Woodruff's ability to safely operate a commercial motor vehicle. Rather, the letter merely averred that Woodruff had signed a "contract" *not* to operate heavy machinery. (*See* Brown Letter, ODOT Mot. Ex. 20, Doc. 61-6, #1605). Indeed, the letter punted on the key issue of whether Woodruff could perform his job functions safely, leaving it to ODOT to decide whether it was "in agreement for patient to continue his current job responsibilities on his current regimen," rather than offering Brown's own opinion on that matter. (*Id.*).

Separately, Vogelstein's examination likewise failed to make the findings that 49 C.F.R. § 382.213(b) requires as a precondition to working while taking Schedule II substances, i.e., a finding that the person can perform the work safely. To the contrary, Vogelstein expressly noted that it was "appropriate" that there be "safety concerns." (Vogelstein Rep., ODOT Mot. Ex. 16, Doc. 61-6, #1603). Woodruff does not point to any other medical evidence in the record that would satisfy the regulation's requirements.

The Magistrate Judge reached a slightly different result on the otherwise-qualified issue based on her view of 49 C.F.R. § 382.213(b)'s underlying purpose. The R&R opines that the regulation "rests on the implicit assumption that opioid use *is not* disqualifying under federal law so long as essential functions can be performed safely notwithstanding use." (R&R, Doc. 75, #2637 (emphasis in original)). Thus, the R&R was willing to credit evidence about the safety issue itself—such as the fact that Woodruff had performed the duties safely in the past while taking the same medications—as creating a genuine dispute, even apart from whether Woodruff had obtained the required medical opinion.

The Magistrate Judge erred, however, in allowing the "implicit assumption" she discerned from the regulation's purpose to supersede the regulation's express requirements, which Woodruff failed to satisfy. *See, e.g., Desert Palace, Inc. v. Costa*, 539 U.S. 90, 98 (2003) ("the judicial inquiry is complete" where terms of applicable law are "unambiguous"). Instead of skipping ahead to whether Woodruff's continued employment as a highway technician might have been broadly compatible with the safety-promoting *spirit* of the regulation, the Magistrate Judge should have analyzed whether Woodruff ever obtained the specific medical opinion that its *terms* required. As discussed above, the record evidence leaves no genuine dispute that Woodruff was not in receipt of any such opinion, and therefore was not compliant with the mandatory terms of the regulation's single exception to its otherwise categorical rule against performance of safety-sensitive functions by users of controlled substances.

13

The second step in ODOT's argument is that Woodruff's failure to comply with the applicable federal regulation rendered Woodruff unqualified for his employment as a highway technician. Again, the Court agrees. Ample case law from the Sixth Circuit, and from other circuits, confirms that individuals who do not conform to applicable federal Department of Transportation regulations are not qualified to perform jobs whose essential functions include operating commercial vehicles. *See, e.g.*, *King v. Mrs. Grissom's Salads, Inc.*, No. 98-5258, 1999 WL 552512, at *2 (6th Cir. July 22, 1999) ("[plaintiff] was required to comply with the requirements of the regulation in order to demonstrate that he was 'otherwise qualified' to be a driver"); *Bay v. Cassens Transp. Co.*, 212 F.3d 969, 974 (7th Cir. 2000) ("Under applicable DOT regulations, [the defendant] was not allowed to permit [the plaintiff] to resume driving until he produced a copy of a doctor's certificate indicating he was physically qualified to drive, … and nothing in the ADA purports to change that obligation."); *Chandler v. City of Dallas*, 2 F.3d 1385, 1395 (5th Cir. 1993) (diabetic, visually impaired bus driver unqualified as a matter of law under federal regulations).

And it would be strange if it were otherwise. In determining whether a disability discrimination plaintiff is qualified, courts afford deference to the employer's determination of what a particular position requires, even where (as in the usual case) the job qualifications are not dictated by applicable federal law. *See, e.g.*, *Cantrell v. Yates Servs., LLC*, 205 F. Supp. 3d 928, 934 (M.D. Tenn. 2016) (applying business judgment rule to consideration of employer's specification of essential job functions). Where, as here, ODOT's determination that Woodruff was

14

not qualified to continue performing his essential duties followed from a straightforward (and correct) application of a federal regulation, it would make little sense to require more.

Equal Employment Opportunity Commissions ("EEOC") guidance further confirms the Court's view. *See Use of Codeine, Oxycodone, and Other Opioids: Information for Employees*, EEOC.GOV (Aug. 5, 2020).[1] The EEOC says that "employers are allowed to disqualify you if another federal law requires them to do it," but "*if you aren't disqualified by federal law* and your opioid use is legal, an employer cannot automatically disqualify you because of opioid use without considering whether there is a way for you to do your job safely and effectively." *Id.* (emphasis added). Similarly, the EEOC says that *"[a]ssuming you aren't disqualified by federal law* or using opioids illegally, the employer must have objective evidence that you can't do the job or pose a significant safety risk, even with a reasonable accommodation." *Id.* (emphasis added).

As ODOT correctly argues, the Magistrate Judge erroneously considered only the guidance's general language about an employer's obligations, while giving short shrift to the provisos specifically excepting situations where federal law expressly requires disqualification. (*See* ODOT Obj., Doc. 78, #2666–67). Properly considered, the EEOC guidance further supports the Court's conclusion that employees whose opioid use would make it illegal under federal law for them to continue to perform their job duties are not qualified to perform those duties.

---

[1] Available at https://www.eeoc.gov/laws/guidance/use-codeine-oxycodone-and-other-opioids-information-employees.

The Magistrate Judge recognized that ODOT had a duty to conduct an "individualized inquiry" to determine whether Woodruff was qualified to do his job. (R&R, Doc. 75, #2634 (citing *Holiday*, 206 F.3d at 643)). But the Magistrate Judge misapprehended the proper object of that inquiry in this case. This is not a case where an employer fires an employee because of the employer's own independent determination that the employee is a safety threat. Thus, the cases Woodruff cites concerning whether an employee constituted a "direct threat" are not relevant here. *See, e.g.*, *Siewertsen v. Worthington Indus., Inc.*, 783 F. App'x 563, 573 (6th Cir. 2019). Instead, ODOT's argument is that Woodruff was not qualified because he had not obtained the medical opinion that the applicable federal regulation requires, and thus could not continue working in his job. (*See* ODOT Obj., Doc. 78, #2664). In other words, the object of ODOT's individualized inquiry was not to determine whether Woodruff *in fact* presented "a substantial safety risk," as the Magistrate Judge suggested. (R&R, Doc. 75, #2637). Rather, ODOT appropriately (and necessarily) focused on the narrower question of whether Woodruff could obtain the required medical opinion that would allow him to work under the federal regulation.

Viewed with this proper aim in mind, there can be no genuine dispute that ODOT's individualized inquiry was adequate. Upon learning of Woodruff's drug test result, ODOT immediately provided Woodruff with a letter for him to give to a medical practitioner. (Stout Decl., ODOT Mot., Doc. 61-3, #1560). The letter accurately outlined the medical opinion that Woodruff would need to resume his job duties under 49 C.F.R. § 382.213(b). When Woodruff submitted a non-complying note

16

from Brown, Page suggested to Woodruff other ways that Woodruff might obtain the required medical opinion. (Page Decl., ODOT Mot., Doc. 61-4, #1564). But Woodruff neither pursued Page's suggestions nor took any other steps to get the required medical clearance. (*Id*.).

ODOT did not stop even then. Instead, ODOT had Vogelstein, a physician, examine Woodruff to see whether Vogelstein could provide the medical opinion required to allow Woodruff to resume work. (Kelly Decl., ODOT Mot., Doc. 61-5, #1566). Vogelstein, though, also declined to make the necessary findings. (Vogelstein Rep., ODOT Mot., Doc. 61-6, #1603). ODOT then gave Woodruff yet another chance— a hearing where Woodruff could present additional medical documentation that would satisfy the requirements of 49 C.F.R. § 382.213(b). (8/13/18 Hearing Notice, Woodruff Dep. Ex. 24, Doc. 44-1, #492). But Woodruff provided no further evidence. (Woodruff Dep., Doc. 44, #252).

Taking seriously, as the Court must, that Woodruff needed to fulfill the requirements of 49 C.F.R. § 382.213(b) before returning to work as a highway technician, the Court concludes that ODOT's individualized inquiry into whether Woodruff could fulfill those regulatory requirements was more than adequate. Indeed, Woodruff makes no concrete suggestion as to what else ODOT should have done to facilitate Woodruff's satisfaction of the regulatory obligation that 49 C.F.R. § 382.213(b) imposes on him.

Rather, Woodruff attempts to sidestep the regulation entirely and instead focus on alleged bias in ODOT's process.[2] For example, Woodruff argues that there is a genuine dispute as to whether he was qualified because Vogelstein's examination relied on the impermissible stereotype that individuals who use opioids will abuse them. (Woodruff Obj., Doc. 79, #2678). But that argument once again asks the Court to skip past the express requirements of 49 C.F.R. § 382.213(b), and instead consider whether there was a genuine dispute about Woodruff's true ability (presumably in the Court's own view) to drive safely. That simply does not matter, though, as the sole question is whether Woodruff provided evidence of the medical opinion that the regulation requires. (*See* ODOT Obj., Doc. 78, #2664).

Accordingly, any bias in Vogelstein's examination could not save Woodruff from the conclusion that Woodruff's failure to conform to the terms of 49 C.F.R. § 382.213(b) made him unqualified to work as a highway technician. Vogelstein's examination was not the sole basis for ODOT's determination that Woodruff had not satisfied the regulatory requirements. Rather, the Vogelstein examination was simply another opportunity that ODOT afforded Woodruff to comply with the regulation's terms. The point is not merely that Woodruff failed to pass Vogelstein's

---

[2] In his briefing, Woodruff appears, at least momentarily, to admit that his true quarrel is with the terms of the federal regulation itself, not ODOT's application of those terms. Woodruff says that "the regulation circumvents the very objectives of the ADA that people with disabilities be judged on the basis of their abilities." (Woodruff Obj., Doc. 79, #2678). Maybe so. But Woodruff makes no argument that the ADA (or Rehabilitation Act) somehow preempts the federal regulation, and the Court doubts that any such argument could succeed. *See, e.g., Chandler*, 2 F.3d at 1395 (diabetic, visually impaired driver categorically unqualified pursuant to valid federal regulation). And to the extent Woodruff contests the wisdom or fairness of the regulation, such considerations are for Congress or the Department of Transportation, not this Court.

18

examination—Woodruff also failed to submit any other evidence, from any medical practitioner of his choosing, that attested to his ability to safely operate a commercial motor vehicle, despite months of chances to do so.

Indeed, it is at best sheer speculation to suggest that a second medical examination arranged by ODOT would have resulted in a medical opinion that would have satisfied the requirements of 49 C.F.R. § 382.213(b). Moreover, Woodruff cites, and the Court finds, no authority for the proposition that an employer who affords a medical examination as one option for fulfilling a federal regulatory requirement must also provide further examinations until one of them turns out favorably to the employee. In any event, Vogelstein's concern that Woodruff might not follow the terms of the opioid use "contract" Woodruff signed with his prescriber was hardly hypothetical; indeed, it appears from the record that Woodruff had in fact already violated that contract on a daily basis by operating heavy machinery at work over a period of years. (*See* Brown Letter, ODOT Mot. Ex. 20, Doc. 61-6, #1605).

In sum, there is no genuine dispute that Woodruff was not qualified to continue in his duties as a highway technician given his failure to comply with the dictates of 49 C.F.R. § 382.213(b). Indeed, it would have been against federal law for him to continue to do so. And because safety-sensitive functions were among the essential functions of the position of highway technician, there was also no reasonable modification of Woodruff's job duties pursuant to which Woodruff could have been qualified. (*See* Highway Technician Classification Specification, Woodruff Dep. Ex. 9,

Doc. 44-1, #460; Johnson Decl., ODOT Mot., Doc. 61-2, #1553); *see also Ford Motor Co.*, 782 F.3d at 761.

Woodruff proffers one last theory. He says that ODOT should have allowed him the "reasonable accommodation" of continuing as a highway technician while taking his prescription only at night. (*See* Woodruff Mot., Doc. 66, #2537). Aside from the semantic question of whether that would count as a "reasonable accommodation" (it sounds like Woodruff changing his conduct, not ODOT changing the job), Woodruff offers no reason to believe that merely taking the prescription at a different time of day would bring Woodruff into conformity with 49 C.F.R. § 382.213(b), and therefore no reason to believe that Woodruff would have been qualified with this "accommodation."

While a hyper-literal reading of the word "when" in the regulation's text might provide some faint support for Woodruff's apparent assumption that taking his prescription only at night, while off-duty, would satisfy the regulation's terms, *see* 49 C.F.R. § 382.213(b) (requiring medical opinion "when the driver uses" particular substances), the only fair reading of the regulation as a whole is that it requires a driver who regularly takes opioids (at any time of day) to have the enumerated medical opinion. And that makes sense. Without such an opinion, an employer (or a court) is in no position to know whether opioids taken at night will continue to have impacts during the next working day. That is why the applicable regulation charges medical professionals, not employers or courts, with making that determination in the first instance. Accordingly, changing the time of day at which Woodruff took his

medication would have done nothing to render Woodruff compliant with the requirements of 49 C.F.R. § 382.213(b).

In conclusion, there is no genuine dispute that Woodruff was not qualified to work as a highway technician, with or without reasonable accommodation, when ODOT terminated him from that position. That is enough to defeat all of Woodruff's claims, and the Court need not consider any other arguments advanced by the parties.

## CONCLUSION

For the reasons set forth above, the Court **SUSTAINS** ODOT's Objection (Doc. 78) to the R&R (Doc. 75), but **OVERRULES** Woodruff's Objection (Doc. 79) to that same R&R (Doc. 75). The Court therefore **ADOPTS** the R&R **IN PART**. Specifically, the Court **GRANTS** ODOT's Motion for Summary Judgment (Doc. 61) with respect to all of Woodruff's claims and **DISMISSES** Woodruff's Complaint (Doc. 1) **WITH PREJUDICE**. The Court **DENIES** Woodruff's Motion for Partial Summary Judgment (Doc. 66). Finally, the Court **DIRECTS** the Clerk to enter judgment in ODOT's favor and **TERMINATE** this case on its docket.

**SO ORDERED.**

March 25, 2022
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**